## STATE ex BAUER v DIRECTOR OF AGRICULTURE

Ohio Appeals, 2nd Dist, Franklin Co

No 1927.   Decided Feb 16, 1932

John B. Osmun and Gerard Pilliod, Cleveland, for relator.

Gilbert S. Bettman, Attorney General, and Isadore Topper, Assistant Attorney General, Columbus, for respondent.

ALLREAD, J.

It is claimed that the delay in filing the petition in mandamus is fatal.  This question came before the Supreme Court in the case of State ex v Witter, Director of Agriculture, 114 Oh St, 357.  The syllabus in this case is:

"A court in the exercise of its discretion may refuse to issue a writ of mandamus in favor of a relator who has allowed an unreasonable time to elapse before bringing his action.  Especially where such delay may be prejudicial to the rights of the respondent."

In the case cited the relator was removed on March 3, 1923, and the petition in mandamus was filed on January 13, 1925.  There was also involved a claim for payment of salary for the time from the date of removal.  A period of more than two years had elapsed.

While it is true that the time elapsing in the present case is only seven months, yet the reasons urged are similar to those urged in the case cited.  It has been held in New York that four months delay was unreasonable.  People v Welde, 59 N. Y. S., 1030; People v Colles, 39 N. Y. S., 698.  In the case of Chinn v Trustees, 32 Oh St, 236, it was held that delay of an unreasonable time in the filing of a suit for mandamus bars the action.

We do not, however, rest our decision upon laches alone, but consider the laches in respect to the evidence in the case.

The first question is the force and effect of the written resignation.

There is a sharp conflict in the testimony upon the subject of the resignation and the means employed to secure the same.  Frank Bauer in his testimony tells the story of the resignation in detail.  He says that he and Frank Dorsey, an inspector of the state medical department, went to the offices of Dr. Lamont Smith and there a bribe was offered of $1200, which Dorsey received; that upon leaving the office of Dr. Smith they were held up by armed men and the money taken from them.  Later, upon an affidavit of Dr. Smith, they were arrested and held in prison.  On Friday morning, about eleven o'clock Bauer was taken from prison into the office of the Chief of Police.  Bauer in his testimony says that he saw Dr. Smith coming

482

out of the office of the Chief of Police. Next, that he saw Perry Green, Director of Agriculture, and the Chief of Police. At this meeting the resignation was given by Bauer. Bauer in his testimony tells a serious story. He claims that his mental condition was pitiful; that Green demanded the resignation, stating that Bauer was a disgrace to the Department and disgrace to himself, and showed him the Youngstown paper containing headlines as to the arrest of two state officers. Bauer claims that Green walked over to the desk of the Chief of Police and took a paper and flashed the paper in front of the relator and insisted that he write out the resignation at once, or if he, Bauer, did not, that he would see that Bauer got the limit on this criminal charge. Bauer claims that he got the paper and wrote something and signed it. Green took the paper and said "This is what I want." Bauer was then taken back to the cell and was in a state of collapse. Dorsey was called as a witness and testified to substantially the same facts. Upon the other hand Green, the Secretary of Agriculture, testified as a witness. His testimony was of an entirely different character from that of Bauer's and Dorsey's. Green denies the inflammatory language imputed to him by Bauer and also by Dorsey. Green says that Bauer was brought into the office of the Chief of Police, just as Dr. Smith was leaving. That Green suggested that Bauer resign and that Bauer agreed to resign; that blank paper was called for and that Bauer wrote out the resignation, signed it and that Bauer delivered the resignation to Green. Green denies all force or fraud by his testimony, and it was shown that Bauer agreed to resign and did so. Green is corroborated by Clarence E. Rowland, a subordinate in the office under Green, and also by the Chief of Police as to the occurences when the resignation was written out. These are the principal witnesses although certain other witnesses were called and testified.

There was therefore a conflict upon the subject of the means used to obtain the resignation of Bauer. At the time the resignation was written out, signed and delivered Dr. Smith had filed the affidavit against Bauer and Dorsey, and in their opinion was intending to prosecute the same. Afterwards Dr. Smith left Youngstown and did not prosecute the charges made against Bauer and Dorsey.

We do not doubt that Bauer was under arrest and in confinement at the time of the execution of the resignation, but he was arrested under the affidavit of Dr. Smith and was in no sense in confinement by any order or charge made by the Director of Agriculture. The Director of Agriculture in his testimony states as follows:

"Q. Did you accuse him of being guilty of the charges?

"A. No sir.

"Q. In making that request for his resignation? A. No sir. In his statement that he was innocent I stated to him that I sincerely hoped that he was innocent and that he be proven that way."

This court does not entertain the view that it is necessary to prove that Bauer was guilty of the charges made by Dr. Smith as to the taking of the money. The only question is as to whether the written resignation was voluntarily made by Bauer and delivered to the Director af Agriculture.

In connection with plaintiff's case it must be cited that he did not file his petition for a period of more than seven months; that he did not enter any objections to the resignation until the appointment of a successor had been decided upon. Bauer claims that he called on Green and was refused admission to his office. At no time did Green encourage Bauer in his application for reinstatement. Bauer wrote a letter dated October 25th, 1929, to the Civil Service Commission in which he states that his resignation "was drawn under a misinterpretation of my legal rights under the Civil Service laws and regulations of the state of Ohio." This letter is in conflict with Bauer's testimony that he, Bauer, did not know or appreciate the effect of the resignation. He also writes to the Director of Agriculture as follows:

"You, on October 18, 1929, demanded my immediate resignation, giving me no opportunity to consult the regulations of the Civil Service Commission of Ohio as to my rights."

This was the first claim on behalf of Bauer made either to the Civil Service Commission or to the Director of Agriculture that his resignation had been improperly obtained. The date of the resignation upon its face was effective at once. Bauer was paid to the end of the month, to-wit, to November 7th, 1929, but he was assigned to no duties after the resignation. No acceptance of the resignation was necessary. This question has been settled in the case of **Reiter v The State ex, 51 Oh**

St, 74. The following syllabus was announced:

"By the rules of the common law, a resignation of an office does not take effect so as to create a vacancy, until such resignation is accepted by the proper authority. But the common law in this regard is not in force in this state to its full extent, and here a resignation without acceptance creates a vacancy to the extent at least to give the jurisdiction to appoint or elect a successor unless otherwise provided by statute."

Cleveland v Luttner, 92 Oh St 493.

Independent of this rule, however, the resignation was accepted and notice was given both to Bauer as well as to the Civil Service Commission of the acceptance of the resignation.

We are clearly of opinion that in view of the delay in making the claim of duress as to the resignation, and in view of the delay in filing the petition in this case, coupled with the conflict in evidence, that the resignation is effective and bars the relator from recovering a judgment in this case. The petition must therefore be dismissed. Judgment accordingly.

HORNBECK and KUNKLE, JJ, concur.

HEARING ON MOTION FOR NEW TRIAL

Decided March 8, 1932

BY THE COURT

This cause is for hearing upon a motion for new trial. We have carefully considered the motion. While there may be some inaccurancies in unimportant facts in the opinion, we reach the conclusion that the judgment in the case was proper and that the motion for a new trial must be overruled.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.